RADER, Circuit Judge,
dissenting-in-part.
This court holds today that the United States Court of Federal Claims (CFC) erred in determining that TransCapital Financial Corporation’s (TFC’s) cost of performance under the assistance agreement was the equity of Transohio, valued at $126,479 million. The trial court found that the essence of this Winstar contract was TFC’s agreement, in exchange for the Government’s regulatory capital contractual promises, “to allow Transohio Savings, in which [TFC] held stock valued at $126,479 million, to acquire two failed thrift institutions with a negative net worth of $130 million, which would have wiped out TFC’s entire equity interest but for the benefits promised by the Govern *871 ment.” Am. Capital Corp. v. United States, 66 Fed.Cl. 315, 355 (2005). Thus, the CFC determined that TFC offered an ongoing business valued at $126,479 million (almost the exact amount of the negative net worth of the failed thrifts) in exchange for the Government’s regulatory-capital commitments. To my eye, the record more than amply supports the trial court on this point. Therefore, I would sustain the trial court’s finding that TFC was entitled to recover the equity value of Transohio.
This court’s majority reasons that nothing in the agreement required Transohio to merge or to contribute Transohio’s value. However, the Assistance Agreement conditioned, as specifically noted by the trial court, the Government’s contractual obligations on the receipt from TFC of “[mjergers [that] have been duly authorized as the sole shareholder of Transohio.” At the time of this transaction, TFC’s primary asset was Transohio. Its net value of $126,470 million was at the time of the transaction almost identical to the negative net worth of the two failed thrifts at $130 million. TFC would not have authorized the merger but for the Government’s promises. Thus, TFC should receive its reliance damages. Landmark Land Co. v. United States, 256 F.3d 1365, 1378 (Fed.Cir.2001). Again, Transohio’s obligations under the merger agreements were expressly conditioned on the execution of the Assistance Agreement. In turn, this agreement states that TFC must authorize the merger.
The Government argues, citing Old Stone v. United States, 450 F.3d 1360, 1371 (Fed.Cir.2006), that only contributions of actual assets, such as “cash” or “stock” are recoverable initial contributions. The Government argues that in this case, neither TFC nor Transohio contributed stock, cash, or any other assets to the transaction. Thus, the Government argues, TFC’s restitution/reliance claims, which are based upon alleged “initial contributions”, should be rejected. The Government misreads this case. Nothing in Old Stone expressly limits the character of a recoverable initial contribution:
We have suggested that restitution of initial contributions of both stock and cash in Winstar transactions may be allowable because both forms of contribution confer a benefit on the government. In Landmark, we held that restitution of an initial cash contribution to a supervisory merger was appropriate when the contribution was expressly required by the assistance contract. In Hansen we indicated that it might be possible to consider a stock transaction as a “benefit conferred” in a Winstar case that would be subject to restrictions.

Id.

In Westfed Holdings, Inc. v. United States, 407 F.3d 1352, 1368 (Fed.Cir.2005), this court affirmed an award of reliance damages measured by the amount the holding company paid to acquire a thrift that then merged with a failing thrift in reliance upon the Government’s regulatory promises. Further, this court in Hansen Bancorp, Inc. v. United States, 367 F.3d 1297, 1303 (Fed.Cir.2004), granted reliance damages to the Hansens, who merged their bank and an insolvent thrift into a new thrift. This thrift was owned by an intermediary company which in turn was wholly owned by the Hansens. These cases amply support the trial court’s decision in this case.
Thus, I would find that the trial court did not err in holding that TFC’s cost of performance under the assistance agreement was the equity of Transohio.